## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**JOSE JORGE ABBUD GORDINHO,**

      **Movant,**

**v.**                                  **Case No. 5:19-cv-00312**
                                                    **Case No. 5:15-cr-00237**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 86).[1] This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

---

[1] The citations in this PF&R reference Gordinho's criminal case: *United States v. Gordinho*, No. 5:15-cr-00237 (S.D.W. Va. 2015).

# I.    <u>Procedural Background</u>

On November 24, 2015, a federal grand jury, sitting in the Southern District of West Virginia, returned an indictment charging Jose Jorge Abbud Gordinho ("Gordinho") with knowingly and intentionally distributing a quantity of oxycodone in violation of 21 U.S.C. § 841(a)(1) ("Count One"); knowingly and intentionally distributing a quantity of oxymorphone in violation of 21 U.S.C. § 841(a)(1) ("Count Two"); conspiring with another individual to knowingly and intentionally distribute controlled substances for illegitimate medical purposes, beyond the bounds of medical practice, in violation of 21 U.S.C. § 846 ("Count Three"); and 18 counts of distributing controlled substances for illegitimate medical purposes, beyond the bounds of medical practice, in violation of 21 U.S.C. § 841(a)(1) ("Counts Four-Twenty One"). (ECF No. 14).

On January 6, 2016, an information was filed as to Gordinho, alleging that he knowingly and willfully executed a scheme or artifice to defraud a healthcare benefit program in violation of 18 U.S.C. § 1347(a)(1). *United States v. Gordinho*, No. 5:16-cr-00007 (S.D.W. Va. 2016) at ECF No. 1. On January 7, 2016, pursuant to a plea agreement, Gordinho entered a plea of guilty before the United States District Court for the Southern District of West Virginia ("Sentencing Court"). (ECF Nos. 66, 67). In the plea agreement, Gordinho waived his right to be charged by indictment, and consented to the filing of the information in Case No. 5:16-cr-00007. (ECF No. 67 at 2). Gordinho agreed to plead guilty to Count Four of the indictment and the charge contained in the information, and the United States agreed to dismiss the remaining charges in the indictment. (*Id.*). The plea deal was a binding agreement made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and established a maximum sentence of up to 10 years in prison if accepted by the Sentencing Court. (ECF No. 67 at 7-8). The plea agreement also stipulated that

Gordinho would waive his right to appeal the sentence as long as the sentence imposed did not exceed 10 years imprisonment, and would additionally waive his right to collaterally attack his conviction and sentence except on the grounds of ineffective assistance of counsel. (*Id.* at 8).

At the plea hearing, after being found competent and capable of entering a guilty plea by the Sentencing Court, Gordinho affirmed that he had adequate time to discuss the case with his attorney, that his attorney had been able to answer any questions he had regarding the criminal case, and that Gordinho was "fully satisfied" with his attorney's performance. (ECF No. 85 at 4-5). The attorney for the United States summarized the terms of the plea agreement, and Gordinho acknowledged that the summary was correct, and he understood the plea agreement. (*Id.* at 6-12). The Sentencing Court discussed what the United States would be required to prove in order to obtain a conviction under Count Four of the indictment, and Gordinho asserted that he was in fact guilty of the offense. (*Id.* at 17-18). Gordinho explained that he continued to prescribe hydrocodone after patients had failed multiple drug screens, a practice which was outside the confines of legitimate medical practice. (*Id.* at 19-21). The following discussion was then had:

> Gordinho: Your Honor, the reason why I kept giving them is because I thought at that time that they needed the medication despite the fact that they were not consistent, perhaps bad judgment on my part.
>
> Sentencing Court: So you're saying that you did not intentionally distribute them outside the bounds of medical practice, Mr. Gordinho?
>
> Gordinho: It was outside the boundaries because I was not following my own contract.
>
> Sentencing Court: And I don't think that answers my question. My question was, did you intentionally distribute the hydrocodone outside the bounds of your medical practice?
>
> Gordinho: I believe I did not, but the Court believes I did.

3

>Sentencing Court: Well, this is your plea of guilty and I need you to tell me whether you are guilty or not. Mr. Forman, I'll give you time with him if you need it, but I do not want to accept a plea here if there aren't facts to support the plea of guilty.

(ECF No. 85 at 21-22). Following a brief recess, the hearing resumed, and Gordinho's attorney informed the Sentencing Court that Gordinho still desired to plead guilty. (*Id.* at 22). The Sentencing Court then asked Gordinho if he prescribed the controlled substances previously discussed "outside of the bounds of medical practice," and Gordinho acknowledged that he had. (*Id.* at 23).

Turning to the charge of healthcare fraud contained in the information, the Sentencing Court informed Gordinho regarding the necessary elements the United States would be required to prove to obtain a conviction, and Gordinho asserted that he was guilty of the offense as charged. (*Id.* at 23-26). Gordinho explained that he was guilty because "[t]he patients, we billed their insurance company when they received a prescription that they should not have to receive it because of their failed screens." (*Id.* at 26). Gordinho further agreed that he billed the insurance companies in question with the intent to defraud. (*Id.*).

The attorney for the United States detailed the evidence that the United States would present at trial, explaining that with respect to Count Four, it would show that on October 2, 2015, Gordinho distributed a quantity of hydrocodone to a patient despite the fact that the patient had failed numerous urine drug screens, which indicated the patient was not taking the medication as prescribed. (ECF No. 85 at 28-30). Gordinho agreed that the facts as summarized were correct. (*Id.* at 34). The Sentencing Court determined that there existed a sufficient factual basis to support Gordinho's guilty plea. (*Id.*). The Sentencing Court then inquired of Gordinho if he was aware that the sentence the

4

Sentencing Court might impose could be different than any estimate provided by his attorney and that, "if you persist in your plea of guilty today and we get to the sentencing phase of this case and you don't like my sentence and it is 10 years or less, do you understand that you would not be permitted to withdraw your plea of guilty?" (ECF No. 85 at 40). Gordinho affirmed that he understood and accepted this possibility. (*Id.*).

Gordinho additionally acknowledged that he was aware that by pleading guilty he waived the right to seek appellate review of his sentence "on any ground whatsoever as long as the sentence is imposed within that 10-year parameter that the parties have agreed upon." (*Id.* at 41). The Sentencing Court accordingly accepted Gordinho's guilty plea, finding that he was competent to enter it, and it was given voluntarily. (*Id.* at 47-48).

Gordinho's sentencing hearing was held on April 27, 2016. The Sentencing Court imposed a sentence of 96 months imprisonment on Count Four of the indictment, and 12 months imprisonment on the charge contained in the information, set to run concurrently with one another. (ECF Nos. 78, 79). Gordinho additionally received a three-year term of supervised release as to both counts, set to run concurrently, and was ordered to pay $48,435.59 in restitution, a $15,000 fine, and a $200 special assessment. (ECF No. 79).

On April 27, 2017, the transcript of proceedings for Gordinho's plea hearing was filed. (ECF No. 85). Almost two years later, on April 24, 2019, the instant petition to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 was entered onto the docket. (ECF No. 86). In the petition, Gordinho asserts that his counsel provided ineffective assistance by refusing to file a direct appeal despite Gordinho's express request that he do so. (*Id.* at 4). Gordinho states that on the day he was sentenced, he asked his attorney to file an appeal, but his attorney refused, saying that Gordinho had waived his right to an appeal. (*Id.*). Gordinho believes this amounted

to a violation of his right under the Supreme Court of the United States ("Supreme Court") decision, *Garza v. Idaho,* 139 S. Ct. 738, 742 (2019). (ECF No. 85 at 4-5). Gordinho explains that he "had many issues he wanted to challenge on Direct Appeal," but that counsel refused to submit the appeal. (*Id.*)

Gordinho states that "according to Title 28 U.S.C. § 2255(f)(3) this habeas Corpus is within the one year time period." (*Id.* at 6). He elaborates on this assertion, explaining that the petition is timely as it was filed within one year of the decision announced in *Garza v. Idaho.* (*Id.*). Gordinho contends that his sentence is unconstitutional and his plea was involuntary based on his attorney's failure to file an appeal when requested. (ECF No. 86 at 8-9). Gordinho requests that this Court "restore and reinstate all of his appeal rights." (*Id.* at 13).

Gordinho submitted a contemporaneous memorandum in support of his petition in which he reiterates his claim that his attorney failed to file an appeal, and provides additional claims contending that various constitutional errors rendered his plea involuntary and his sentence illegal. (ECF No. 87). Gordinho asserts that his counsel was ineffective for (1) not moving to dismiss the charge of conspiracy due to the fact that it is impossible to conspire with a government informant; (2) not objecting to the fact that Gordinho's sentence was unconstitutionally enhanced due to dismissed conduct; (3) not objecting to the amount of controlled substances attributed to Gordinho; (4) not objecting to the use of information provided by an informant; (5) failing to provide evidence that Gordinho provided appropriate treatment to the vast majority of his patients; and, (6) not objecting to the use of information which was "stolen" from Gordinho's office by a government informant intent on entrapping Gordinho. (*Id.* at 5-9). Gordinho additionally asserts that his plea was involuntary because (1) the agreement was violated by the

Sentencing Court, the United States, and Gordinho's counsel when information Gordinho believed would not be exposed was revealed at the sentencing hearing; (2) the government informant stole Gordinho's patient charts and gave them to the government, violating Gordinho's right to be free from unreasonable searches and seizures; and (3) a government witness took and failed a lie detector test. (ECF No. 87 at 5-6). Gordinho asserts that this Court has jurisdiction to hear his motion under 28 U.S.C. § 2255(f)(3). (*Id.* at 3).

On April 25, 2019, the undersigned entered an Order directing Respondent to answer Gordinho's motion within 60 days. (ECF No. 90). In the Order, the undersigned directed Respondent to address Gordinho's claim that his motion was timely despite being filed nearly three years after his sentencing. (*Id.* at 1). On May 9, 2019, Gordinho submitted a supplemental argument in support of his § 2255 motion in which he provides additional detail regarding his claim that his attorney failed to submit an appeal when requested. (ECF No. 92). Gordinho states that he wished his attorney to appeal based on the fact that Gordinho's guilty plea was coerced. (*Id.* at 1). Gordinho explains that his counsel advised him that he would receive a sentence of 18 months based on the binding plea agreement, but Gordinho ultimately received a sentence of 8 years. (*Id.*). Gordinho believes his counsel refused to submit an appeal because it would have revealed counsel's deficient performance in erroneously advising Gordinho he would only be sentenced to 18 months imprisonment. (*Id.* at 1-2).

On July 31, 2019, Respondent submitted a motion requesting an extension of time within which to respond to Gordinho's motion. (ECF No. 95). In the motion, Respondent noted that due to a clerical error, a notice of appearance had not been filed leading to a delay in Respondent's ability to timely comply with the Order directing him to respond to

the motion. (*Id.* at 1). On August 1, 2019, the undersigned entered an Order granting Respondent's request and directing Respondent to submit a response to Gordinho's motion by August 5, 2019. (ECF No. 96). On August 2, 2019, Respondent submitted a Response to Gordinho's § 2255 motion. (ECF No. 97). Respondent alleges that Gordinho's motion is untimely as it was not submitted within one year of the date his sentence became final as required by statutory law governing § 2255 motions. (*Id.* at 1). Respondent contends that Gordinho's motion is not rendered timely under § 2255(f)(3), because the Supreme Court decision in *Garza* did not announce a new rule of constitutional law made retroactive to cases on collateral review. (*Id.* at 4-5). Accordingly, Respondent requests that Gordinho's § 2255 motion be dismissed. (*Id.* at 7).

On August 5, 2019, Gordinho filed a motion requesting he be granted default judgment. (ECF No. 98). Gordinho believed he was entitled to default judgment as Respondent had not complied in a timely fashion with the undersigned's Order directing Respondent to answer the motion. (*Id.* at 2). On August 6, 2019, the undersigned entered an Order denying Gordinho's request for default judgment as moot based on the fact that Respondent had demonstrated good cause for the delay and had already been granted an extension of time to submit the response. (ECF No. 100).

On September 30, 2019, Gordinho submitted a reply to Respondent's request his motion be dismissed. (ECF No. 101). Gordinho claims that he did not intend to rely on the decision in *Garza* to support an argument that his motion was timely under § 2255(f)(3), and instead meant merely to rely on that case for the proposition that his attorney's failure to file an appeal was a violation of Gordinho's constitutional rights. (*Id.* at 3). Gordinho requests that this Court "strike from the record" the portion of his motion which asserts that his motion is timely under § 2255(f)(3). (*Id.*).

8

Gordinho contends that his motion is timely, not because it relies on new, retroactively applicable law, but because extraordinary circumstances prevented Gordinho from submitting a timely § 2255 motion. (ECF No. 101 at 3). Gordinho explains that after his counsel refused to submit a direct appeal, Gordinho "timely hired" an attorney to submit a § 2255 motion on his behalf. (*Id.* at 3-4). Gordinho asserts that in January 2017, he hired attorney Patrick Joyce to submit a § 2255 motion. (ECF No. 101 at 4). Gordinho told Mr. Joyce that he needed his motion to be submitted by April 27, 2017, and Mr. Joyce assured Gordinho that he could prepare the motion within that time frame. (*Id.*). Despite this assurance, however, Mr. Joyce did not file a timely § 2255 motion. Gordinho states that he "waited for so long and learn[ed] that Counsel, Patrick Joyce, did nothing." (*Id.*).

Gordinho claims that upon learning of Mr. Joyce's failure to submit a § 2255 motion, Gordinho hired another attorney, Rupak Shah, to complete the motion. (*Id.*). However, to Gordinho's consternation, Mr. Shah too failed to submit a § 2255 motion on Gordinho's behalf. (*Id.*). Gordinho contends that he is entitled to equitable tolling as he has been diligently pursuing his rights and the delay in submission of his § 2255 motion is attributable to the ineffective assistance of the attorneys he hired to complete the motion. (*Id.* at 6). Gordinho attaches an affidavit in which he reiterates his claim that he hired, and was subsequently abandoned by, Mr. Joyce and Mr. Shah in pursuit of submitting his § 2255 motion. (ECF No. 101-1 at 1).

On May 13, 2020, the undersigned entered a Memorandum Opinion and Order addressing the new claims as to timeliness raised by Gordinho. (ECF No. 102). The undersigned determined that obtaining affidavits from the attorneys Gordinho asserted had improperly delayed his motion would assist in analyzing Gordinho's claims, and

accordingly ordered Mr. Joyce and Mr. Shah to file affidavits addressing Gordinho's claims of abandonment. (*Id.* at 6).

Mr. Joyce supplied an affidavit in accordance with this Order on May 29, 2020. (ECF No. 103). Mr. Joyce explains that in April 2017, he was contacted by Marta Cole, Gordinho's sister, who had learned of Mr. Joyce due to publicity surrounding a case he had overseen in the Southern District of New York. (*Id.* at 1). Mr. Joyce asserts that using publicly available records he ascertained that Gordinho was sentenced in April 2016, and that, consequently, he informed Ms. Cole that Gordinho's time to file a direct appeal had expired. Mr. Joyce told Ms. Cole that he could investigate what, if any, other remedies were available to Gordinho, and was retained by Ms. Cole to do so. (*Id.*).

Mr. Joyce asserts that on either April 13, or April 14, 2017, he met with Gordinho at a federal correctional institution in Ashland, Kentucky to discuss Gordinho's available remedies. (*Id.*). Gordinho explained the facts surrounding his criminal case, as well as his frustration with attorneys he had previously hired to represent him. (*Id.* at 1-2). Gordinho was particularly upset that, in determining the appropriate sentence, the Sentencing Court considered evidence suggesting that Gordinho had committed sexual offenses. Gordinho contended that this suggestion unfairly damaged his reputation. (ECF No. 103 at 2).

Mr. Joyce states that he informed Gordinho it was "highly unlikely" he would file a motion pursuant to § 2255 on Gordinho's behalf as the time for doing so would expire before Mr. Joyce could complete his investigation. (*Id.*). Mr. Joyce was aware that Gordinho was considering pursuing a civil remedy against the attorneys who had represented him in his criminal case. (*Id.*). Mr. Joyce informed Gordinho that he would request the transcripts of the plea and sentencing hearings and would inform Gordinho's

sister regarding any further steps Mr. Joyce might take. The transcripts were requested by Mr. Joyce on April 18, 2017, and were received on April 27, 2017. (ECF No. 103 at 2).

Mr. Joyce asserts that in May 2017, he informed Gordinho's sister that, based on Gordinho's waiver of his right to appeal or collaterally attack his convictions, the fact that Gordinho had expressed satisfaction with his attorney during the plea hearing, Gordinho's acknowledgements that he understood and agreed to the terms of the plea agreement, and his admission of guilt, Mr. Joyce would not be pursuing a motion under § 2255. (*Id.*). However, as Gordinho had expressed an interest in pursuing a civil lawsuit against his former attorneys, Mr. Joyce did not close his file.

In March of 2018, Mr. Joyce was contacted by Mr. Shah and informed that Gordinho had retained Mr. Shah to pursue post-conviction relief options. Mr. Joyce accordingly sent a copy of Gordinho's file to Mr. Shah on March 12, 2018. (*Id.*). Mr. Joyce had contact with Ms. Cole and Gordinho in March 2020 regarding the potentiality of obtaining compassionate release for Gordinho, but had not otherwise heard from Gordinho or Mr. Shah since March 2018. (*Id.* at 2-3).

On June 12, 2020, Mr. Shah supplied an affidavit detailing the history of his representation of Gordinho. (ECF No. 104). Mr. Shah explains that in January 2018, while he was employed as an attorney at the law firm of Escobar & Associates, P.A., located in Tampa, Florida, he communicated with Gordinho's niece, who was attending law school in the Tampa area, regarding Gordinho's criminal case. (*Id.* at 2). Later that month, Mr. Shah spoke on the telephone with Gordinho, who expressed frustration with his former attorney, Mr. Joyce, due to his failure to submit any pleadings on Gordinho's behalf. (*Id.* at 2-3). Mr. Shah explained to Gordinho that a service he could offer was a "review" of Gordinho's potential post-conviction remedies. (*Id.* at 3). Mr. Shah further explained that,

without conducting such a review of potential legal remedies, he would be unable to offer Gordinho accurate advice regarding any available options. Mr. Shah indicated that, if he were retained, he would provide an "opinion letter," detailing "any viable claims of relief we identified and their corresponding strengths, weaknesses, and consequences; and (if applicable) how much it would cost to be retained on a legal proceeding if a claim was determined to be viable." (ECF No. 104 at 3). Mr. Shah recalls discussing with Gordinho the possibility of investigating whether there existed any "newly discovered evidence," which could support the filing of a post-conviction relief motion. (*Id.*).

Mr. Shah asserts that in February 2018, Gordinho retained his firm to conduct a post-conviction review of his case. (ECF No. 104 at 4). Mr. Shah continued to act as counsel to Gordinho until May 2019, when Mr. Shah delivered a final opinion letter to Gordinho. Between February 2018 and May 2019, Mr. Shah indicates that he investigated numerous potential claims for post-conviction relief. (*Id.* at 4-8). Mr. Shah recalls speaking with Mr. Joyce in March 2018, following which he received Gordinho's case file from Mr. Joyce. (*Id.* at 9). Mr. Shah asserts that, at the direction of Gordinho, he persisted in attempting to uncover new evidence related to a government informant until early 2019; however, by that point he had not been able to uncover anything useful and began to doubt that any new and beneficial evidence regarding the informant would be forthcoming. (*Id.* at 9-10).

Mr. Shah spoke to Gordinho on the telephone in early 2019, and informed Gordinho the law firm would soon provide him an opinion letter. (*Id.* at 10). Mr. Shah relayed to Gordinho that he had been unsuccessful in uncovering new information regarding the government informant. (ECF No. 104 at 10). Mr. Shah further advised that

he would be leaving the law firm of Escobar & Associates as he was moving to California in late 2019, and that he would supply the opinion letter prior to leaving the firm. (*Id.*).

Mr. Shah asserts that he had nearly completed the opinion letter by late April or early May 2019, but needed to speak with Gordinho before it could be fully completed. (ECF No. 104 at 10-11). Mr. Shah was scheduled to speak with Gordinho via telephone on May 13, 2019, however, the conversation did not occur. (*Id.* at 11). On May 20, 2019, Mr. Shah received a letter from Gordinho informing him that Gordinho had submitted a *pro se* action in his criminal case, that Gordinho was unsatisfied with Mr. Shah's legal work, and that Gordinho wished to have his money returned. (*Id.* at 11). On May 22, 2019, Mr. Shah mailed to Gordinho a cover letter and a 40-page opinion letter. (*Id.* at 12). In the cover letter, Mr. Shah expressed concern that Gordinho had submitted a *pro se* motion to vacate his conviction as this might have the effect of invalidating Gordinho's plea agreement and exposing him to a higher sentence, an eventuality outlined in the opinion letter. (ECF No. 104 at 13). Mr. Shah additionally expressed concern that Gordinho believed the firm had determined not to complete the opinion letter and assured him that this was not the case. (*Id.*).

According to Mr. Shah, he last spoke with Gordinho in July 2019, and Gordinho informed Mr. Shah that he no longer wished Mr. Shah to provide legal assistance. (*Id.* at 14-15). In the affidavit, Mr. Shah states that in early 2019, Gordinho "may have subjectively believed we did in fact abandon our work on his case," but asserts that the firm did not do so. (*Id.* at 15). Mr. Shah asserts that the firm was never retained to complete a § 2255 motion, and instead was hired to conduct a review of Gordinho's available post-conviction remedies. (*Id.*).

13

## II.    <u>Standards of Review</u>

Respondent requests that Gordinho's motion be dismissed. (ECF No. 97 at 1). Respondent does not articulate under which rule's authority he seeks dismissal, but, presumably, this request is made pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018); Rule 12, *Rules Governing Section 2255 Proceedings for the United States District Courts* (stating that "[t]he Federal Rules of Civil Procedure … to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.")

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the motion as true and "draw all reasonable factual inferences" in favor of the movant. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d

14

at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Gordinho filed the instant § 2255 motion in April 2019. (ECF No. 86). A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary

hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III.   __Discussion__

Claims under 28 U.S.C. § 2255 are governed by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a one-year statute of limitations. Under the AEDPA, a § 2255 motion must be filed within one year of the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In this case, Gordinho's judgment of conviction was entered on April 28, 2016. (ECF No. 79). Under Rule 4(b) of the Federal Rules of Appellate Procedure, Gordinho had 14 days to file a notice of appeal, but he did not do so. Therefore, Gordinho's judgment of conviction became final on May 12, 2016, when the relevant time period expired. Gordinho did not file a § 2255 motion until April 15, 2019, nearly three years later. (ECF No. 86 at 13). Consequently, Gordinho's motion is time barred under § 2255(f)(1), unless he can demonstrate that he is entitled to equitable tolling, or that one of the other subsections of § 2255(f) applies to his case.

Gordinho does not contest Respondent's assertion that his § 2255 motion is

untimely under § 2255(f)(1); however, he does argue that he is entitled to equitable tolling of the limitations period. (ECF No. 101 at 4). While in his initial motion Gordinho asserted that he was entitled to proceed under § 2255(f)(3), (ECF No. 86 at 6), he has disavowed this position, requesting that the argument be stricken from the record as insufficiently filed. (ECF No. 101 at 3). Instead, Gordinho now asserts that he is entitled to equitable tolling due to his abandonment by a succession of attorneys. (*Id.*).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has long recognized that the AEDPA statute of limitations can be tolled in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Furthermore, the Supreme Court established in *Holland v. Florida*, 560 U.S. 631, 649 (2010), that equitable tolling should only be extended when a habeas petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

In this case, Gordinho asserts that he is entitled to equitable tolling because he was abandoned by two successive attorneys he hired to represent him in pursuit of post-conviction relief. (ECF No. 101-1 at 1). Gordinho explains that on the day of sentencing, he requested counsel submit an appeal challenging the sentence imposed. However, his attorney refused to do so, telling Gordinho that he had waived his right to appeal. (ECF No. 86 at 4). Gordinho hired Mr. Joyce in 2017 to submit a § 2255 motion, but Mr. Joyce allegedly abandoned Gordinho and did not submit a motion as promised. (ECF No. 101 at

17

4). When Gordinho learned of this failure, he hired Mr. Shah to represent him in his pursuit of post-conviction relief; however, Mr. Shah likewise failed to file any motion, leaving Gordinho no choice but to proceed *pro se*. (*Id.*).

The extraordinary circumstances "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). "Extraordinary circumstances" exist when an obstacle external to the party "stood in [its] way," and caused the delay. *Id.* While garden variety attorney malfeasance is insufficient to warrant equitable tolling, *Holland*, 560 U.S. at 651-52, a criminal attorney's *abandonment* of his client, without notice, may constitute extraordinary circumstances. *See Maples v. Thomas,* 565 U.S. 266, 281-82 (2012). The question of whether equitable tolling applies hinges on the particular circumstances of each case. *Campbell v. United States*, No. CIV. CCB-13-670, 2013 WL 5945656, at *1 (D. Md. Nov. 5, 2013).

In *Holland,* the Supreme Court determined that the attorney's negligence rose well above the level of "excusable neglect" where the attorney:

> [1] failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. [2] Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. [3] Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And [4] Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

560 U.S. at 652. Gordinho claims that he first approached Mr. Joyce in January 2017, approximately four months before the statutory deadline. (ECF No. 101 at 4). Gordinho informed Mr. Joyce that he needed his § 2255 motion submitted by April 27, 2017, and Mr. Joyce assured Gordinho that he would do so, but never submitted a motion. (*Id.*). Mr.

Joyce, by contrast, testifies in his affidavit that he was first approached by Gordinho's sister in April 2017, and met with Gordinho on either the 13th or 14th of that month. (ECF No. 103 at 1). At this meeting, Mr. Joyce states, he specifically informed Gordinho that, if retained, it was highly unlikely he could submit a § 2255 motion on Gordinho's behalf as the time for doing so would expire before he could complete an investigation. (*Id.*). Mr. Joyce affirms that, in May 2017, he definitively informed Gordinho's sister that he would not be submitting a § 2255 motion after having had the opportunity to review the plea transcript. (*Id.*).

Gordinho does not provide specific details related to when and how he learned that Mr. Joyce had not submitted a § 2255 motion, saying only that after Mr. Joyce assured him he would submit a timely motion for habeas relief, Gordinho "waited for so long" only to learn that Mr. Joyce had done nothing. (ECF No. 101 at 4). Feeling "defeated," Gordinho then hired Mr. Shah to pursue a motion for habeas relief; however, Mr. Shah also failed to follow through on his promise to submit a motion. (ECF No. 101-1 at 1).

Mr. Shah testifies in his affidavit that he was contacted by Gordinho in January 2018. Contrary to Gordinho's assertion, Ms. Shah represents that he was not hired by Gordinho to prepare a § 2255 motion, but rather to complete a "review" of Gordinho's available post-conviction remedies and issue an "opinion letter." (ECF No. 104 at 2-3, 15). Mr. Shah states that the opinion letter was ultimately delivered in May 2019, after Mr. Shah became aware that Gordinho was under the impression he had been abandoned by Mr. Shah's law firm, and had elected to proceed *pro se*. (*Id.* at 11-12).

Taking Gordinho's version of events as true, and assuming *arguendo* that Gordinho was abandoned by his attorneys, and this abandonment amounted to "extraordinary circumstances," which were beyond his control, Gordinho is still unable to

demonstrate that he was "pursuing his rights diligently" as required to establish his entitlement to equitable tolling. *Salley v. United States*, No. CIV.A. 2:09-1109, 2010 WL 2653383, at *1 (S.D.W. Va. July 2, 2010). This Court has recognized that even in cases where a petitioner's attorney has failed to comply with requests to submit pleadings, a petitioner must demonstrate that "he was reasonably diligent in pursuing his rights," in order to be entitled to equitable tolling. *See Greer v. United States*, No. 5:14-CR-00202-01, 2019 WL 5681530, at *4 (S.D.W. Va. Nov. 1, 2019), *appeal dismissed*, 801 F. App'x 178 (4th Cir. 2020).

The facts as presented by Gordinho do not demonstrate reasonable diligence in the pursuit of his § 2255 motion. Gordinho was aware in April 2016 that his attorney was unwilling to submit an appeal; nevertheless, Gordinho waited over eight months to do anything about it, only attempting to retain an attorney in January 2017. Despite being aware that his time to submit a motion was soon to expire, when he hired Mr. Joyce, Gordinho apparently took no steps to monitor the filing of his motion, ensure that it was submitted on time, or determine its status. Gordinho does not provide any details regarding his communications with Mr. Joyce, or verify when he first learned that Mr. Joyce had not submitted a § 2255 motion. However, Gordinho clearly knew of this failure before he approached Mr. Shah for help in January 2018. (ECF No. 104 at 2). Notably, even then, Gordinho made no effort to file a *pro se* § 2255 motion, or contact the Clerk of Court for the appropriate forms.

The course of action taken by Gordinho was not reasonably designed to preserve his right to file a § 2255 motion. Conclusory assertions that delay has been caused by an attorney's "abandonment" have been held by many courts in this Circuit to be insufficient to establish equitable tolling when unaccompanied by proof that the petitioner was

persistent in his efforts to contact his attorney and ascertain the status of his case. *See Greer,* No. 5:14-CR-00202-01, 2019 WL 5681530, at *4 (holding that petitioner failed to satisfy reasonable diligence prong based on claim that attorney abandoned him when the petitioner failed to take any action for three years); *see also Garcia v. United States*, No. 5:12-CR-00054-RLV-1, 2017 WL 2454324, at *2 (W.D.N.C. June 6, 2017) ("While it may be reasonable for a prisoner to wait for some short period of time for an attorney to take promised action, Petitioner has waited for more [than] three years, which does not constitute diligence in pursuing his rights."); *Salley*, No. CIV.A. 2:09-1109, 2010 WL 2653383, at *2 n.2 (finding the petition was not entitled to equitable tolling and contrasting the petitioner's failure to follow up on request that attorney submit a § 2255 petition for nearly a year with the diligence displayed by the petitioner in *Holland*); *Way v. United States*, No. CIV.A. DKC 07-2183, 2011 WL 915339, at *4 (D. Md. Mar. 15, 2011) (the petitioner's assertion that his counsel failed to file a § 2255 petition as promised did not entitle him to equitable tolling as the petitioner did not demonstrate that he made any reasonable effort to monitor his case); *United States v. Sells*, 391 F.App'x 700, 701 (10th Cir.2010) ("Waiting over a year past the limitations deadline to determine whether counsel filed a motion does not support diligence."); *Reeves v. United States*, No. 5:09-CR-204-FL, 2012 WL 1978289, at *2 (E.D.N.C. June 1, 2012) (holding that the petitioner did not demonstrate due diligence after waiting over a year to check on the status of the case and realize attorney had failed to submit an appeal); *Anjulo–Lopez v. United States,* 541 F.3d 814, 818–19 (8th Cir.2008) (same); *United States v. Arcoren*, 633 F.Supp.2d 752, 759 (D.S.D.2009) ("A reasonably diligent person in [the petitioner's] position could and should have ascertained whether an appeal had been taken a short time after the

appeal deadline had passed and well before the 18 months he maintains it took him to find this out.").

Gordinho's § 2255 motion was submitted nearly three years after his judgment became final, nearly two years after expiration of the statutory deadline, and nearly two years after the alleged abandonment by Mr. Joyce. By the time Gordinho hired Mr. Shah in February 2018, Gordinho knew that the deadline for filing a § 2255 motion had long since passed. These undisputed facts carry substantially more weight than Gordinho's conclusory assertion that his failure to file a timely motion was due to the negligence of his attorneys. Particularly, as Gordinho provides no proof of his own diligence.

Given that Gordinho has failed to demonstrate reasonable diligence in the pursuit of his post-conviction remedies, the undersigned **FINDS** that Gordinho is not entitled to equitable tolling; therefore, his motion is untimely and subject to dismissal.

## IV.    **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 86), be **DENIED,** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the

22

Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: July 10, 2020

Cheryl A. Eifert
United States Magistrate Judge